# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA
### Ft. Pierce Division
## Case Number: 11-14135-CIV-MARTINEZ-LYNCH

KEITH D. CLARK, an individual,
    Plaintiff,

vs.

VIRGINIA A. CLARK, an individual,
    Defendant.



FILED by _____ D.C.

JAN 2 4 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## ~~JOINT~~ PRETRIAL STIPULATION

Pursuant to this Court's Order for Joint Pretrial Stipulation dated August 23, 2011, and in compliance with this Court's Local Rule 16.1E, the Plaintiff hereby submits this ~~Joint~~ Pretrial Stipulation:

## A.    GENERAL STATEMENT OF EACH PARTY'S CASE.

**1. Plaintiff.**    Contends that Plaintiff and Defendant shared a 50%/50 ownership in a commercial property and agreed to share all costs and income equally. Plaintiff and Defendant eventually entered into shared debt of equal amounts using the Property as collateral. Over a period of years Defendant continued to increase a disproportionate amount of debt on the Property through refinancing, taking funds ($495,000) out for Defendant's exclusive use, until it had evolved from a 50%/50% share to a 20%/80% share, with Plaintiff having only 20% of the debt ($165,000) and Defendant having the remaining 80% ($660,000) of the debt.

All payments were made in a timely manner to the Lender(s). Plaintiff agreed to allow Defendant to increase the overall amount of debt based upon Defendant's repeated assurances that Defendant had plenty of income and no problem making the financial obligations. Defendant had exclusive 100% use and benefit of the disproportionate funds ($495,000) borrowed against the property. Defendant borrowed the maximum Loan to Value (LTV) available on the Property,

effectively utilizing Plaintiff's equity in addition to Defendant's share to secure the debt, denying Plaintiff access to utilize Plaintiff's equity to acquire funds requested by shifting the ratio of debt secured by the Property from 20%/80% to 25%/75%.

Plaintiff contacted Defendant to inquire about status of the outstanding loan and the plans for renewal of the existing loan o/a June 10, 2009, and Defendant began to inquire if Plaintiff would be interested in taking in a new partner, selling the Property, or selling Defendant's 50% interest o/a July 1, 2009. It was eventually learned the cause of this was Defendant could no longer make the payments or find refinancing of the existing debt, and while Plaintiff could secure refinancing for Plaintiff's share of debt, could not find acceptable refinancing to cover Defendant's share as well, so the Property was listed for sale and sold to avoid foreclosure. At the time of Closing (March 4, 2010) Plaintiff was forced to pay $211,839.26 out of Plaintiff's proceeds to pay Defendant's debt on the Property, while on the same day Defendant was receiving $63,402.96, none of which was shared with Plaintiff.

Plaintiff allowed Defendant time to reorganize finances after sale of the Property, and when contacted by Plaintiff she declined to answer correspondence, and eventually after talking to counsel denied owing any debt to Plaintiff.

On March 4, 2011 Plaintiff filed this Action to seek repayment of the monies Plaintiff paid on behalf of Defendant's debt. Initial Complaint is for breach of contract, and unjust enrichment.  Plaintiff requested discovery, and received limited response and objections from Defendant. Plaintiff subsequently moved the Court for Motion to Compel, followed by a Motion for Instant Discovery, both of which were granted, however Defendant has refused to provide full Discovery as demanded by Plaintiff and this Court. Plaintiff has since Amended Complaint to include Fraud by False Representation, as the limited Discovery provided by Defendant has

made it implausible to come to any other conclusion based upon the representations made to

Plaintiff.

    **2. Defendant**. Contends that . . .

**B.**    **FEDERAL JURISDICTION**. The Court has jurisdiction over this action pursuant to

over this action pursuant to 28 U.S.C. § 1332 (1).

**C.**    **PLEADINGS RAISING ISSUES.**

    1.    On March 4, 2011 Plaintiff brought this Action, seeking, among other things:

        (a) Finding of Breach of Contract,

        (b) Finding of Unjust Enrichment,

        (c) Finding of Fraud by False Representation,

        (d) Order awarding Plaintiff the sum of $211,839.26 for the amount paid on

        behalf of Defendant at the time of Closing,

        (e) Order awarding Plaintiff Putative Damages for Defendant's Fraud by False

        Representation.

        (f) Order awarding Plaintiff accrued interest and fees in the filing of this action.

    2.    On April 13, 2011 Defendant filed an Answer and Defense denying, among other

    things:

        (a) Denying that Defendant is in breach of any contract

        (b) Denying that Defendant has received any undue enrichment.

    3.    On August 28, 2010, this Court Ordered a trial to be held over the two weeks

    beginning February 13, 2012 to address Plaintiff's cause of action set forth in the

    Verified Complaint.

**D.**    **LIST OF ALL PENDING MOTIONS.**

1.      Plaintiff's Motion to for Summary Judgment [DE 26].

2.      Plaintiff's Motion for Striking of Answer [DE 40].

3.      Plaintiff's Request For Order That Defendant Reimburse Plaintiff For Cost Of Mediation Defendant Failed To Attend [DE 41].

4.      Plaintiff's Motion to Amend Complaint [DE 45].

5.      Plaintiff's Third Request For Instant Discovery.

E.      **CONCISE STATEMENT OF ADMITTED FACTS.**

1.      Plaintiff and Defendant acquired the property at 1898-1900 W. Lincoln Avenue, Anaheim, California (hereinafter "Property") and each held an equal 50% share of ownership.

2.      On August 7, 2008 Plaintiff and Defendant took out a loan in the amount of $825,000.00 using the Property to secure the note.

3.      Plaintiff and Defendant received disproportionate amounts of the proceeds of the loan, Plaintiff received 20% ($165,000.00), and Defendant received the remaining 80% of the loan ($660,000.00).

4.      Defendant received full and complete benefit of the amount of $495,000 that exceeded Plaintiff's share of the loan secured by the Property.

5.      Plaintiff and Defendant agreed to pay the portion of the monthly payment equal to the amount/percentage of the proceeds they received, Plaintiff $1320.00, and Defendant $5280.00 per month.

6.      All payments on the Property were made in a timely manner.

7.      On March 4, 2010 Plaintiff and Defendant sold the Property for $1,000,000.

8.      At Closing on the Property Plaintiff was required to pay $211,839.26 out of Plaintiff's proceeds to cover the shortage on the amount due on Defendant's disproportionate debt.

9.      On March 4, 2010 Defendant received $63,402.96 for another commercial property Defendant sold.

## F.   NATURE OF THE ACTION.

1.      On March 4, 2010, Plaintiff Keith D. Clark ('Plaintiff") and Defendant Virginia A. Clark ("Defendant") Closed on the sale of their jointly owned commercial property (Property). Although Plaintiff and Defendant shared an equal 50% ownership, they carried an agreed upon disproportionate amount of debt secured by the Property ($825,000), with Plaintiff owing only 20% ($165,000) and Defendant owing the balance of 80% ($660,000). Sale price of the Property was $1,000,000, with Plaintiff and Defendant each being due $500,000 and share equally all other costs of selling the property, $74,942.51 ($37,296.00 each).

2.      At the time of Final Settlement, March 4, 2010, $839,437.50 was owed to Loan Oak Fund, LLC., and Plaintiff and Defendant were to pay their respective percentages (Plaintiff 20% - $167,887.50, and Defendant 80% - $671,550.00), and share equally all other costs of selling the property, $74,942.51 ($37,296.00 each).

3.      Defendant's 50% of proceeds was not adequate to pay all of her indebtedness so $211,839.26 was retained and/or diverted from Plaintiff's 50% interest in sale proceeds to pay off Defendant's debt.

## G.   CONCISE STATEMENT OF ISSUES OF LAW UPON WHICH THERE IS

**AGREEMENT.**

1.      The parties agree that they were equal 50%/50% owners of the Property.

2.      The parties stipulate they agreed to and held a disproportionate amount of debt on the Property [20%/80% split], with Plaintiff having 20% of the debt ($165,000) and Defendant's 80% ($660,000) debt on the Property.

**H.      CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT.**

1.      Whether a Contract existed between Plaintiff and Defendant for repayment of debt on the Property.

2.      Whether Defendant Breached a Contract with Plaintiff by requiring Plaintiff to repay the disproportionate amount of debt Defendant encumbered the Property with.

3.      Whether Defendant has received Unjust Enrichment by receiving exclusive use of $495,000.00, and when being unable to repay the full debt at the time of Closing and therefore requiring $211,839.26 be taken out of proceeds due Plaintiff.

4.      Whether Plaintiff's decisions were formulated and/or based upon fraudulent representations and/or omissions made and maintained by Defendant.

5.      Whether Plaintiff is owed repayment of $211,839.26 by Defendant.

6.      Whether Plaintiff is owed repayment of $25,000.00 by Defendant for interest.

7.      Whether punitive damages should be awarded against Defendant in favor of Plaintiff for Fraud by False Representation.

I.    **TRIAL EXHIBITS.**  The Plaintiff stipulates that the exhibits listed are authentic and are admissible, and/or are true and correct copies of Emails sent or received, or provided in Discovery.

If there is a dispute as to the authenticity or admissibility of either party's exhibits, the objecting party shall file and serve concurrently with this the joint pretrial stipulation any motion to exclude evidence with supporting memorandum of points and authorities. The failure to object to the admission of exhibits listed shall be deemed a waiver of any objections.

1. **Plaintiff:**    The Plaintiff offers the following list of Exhibits, 1-28.

| Trial Exhibit Number | Title/Description | Objection |
|---|---|---|
| 1 | Lone Oak LOI | |
| 2 | E-mail (2) Debt Ratio 80/20 split | |
| 3 | E-mail (3) KDC inquires about 25/75 split | |
| 4 | E-mail (4) Introduce Partners Idea | |
| 5 | E-mail (5) Bring in Partner | |
| 6 | E-mail (6) VAC Bankruptcy vs Renting | |
| 7 | E-mail (7) KDC does not want to sell | |
| 8 | E-mail (8) Phil Voorhees 1st Contact | |
| 9 | E-mail (9) Phil Voorhees 1st Reply | |
| 10 | E-mail (10) VAC RE Phil Voorhees | |
| 11 | E-mail (11) VAC wants to sell if break even | |
| 12 | E-mail (12) Secure W/Note on VAC Property | |
| 13 | (13) Settlement from First American | |

| 14 | E-mail (14) 1st inquiry for VAC Repayment | |
| 15 | E-mail (15) 2nd inquiry for VAC Repayment | |
| 16 | E-mail (16) 3rd inquiry for VAC Repayment | |
| 17 | E-mail (17) 4th inquiry for VAC Repayment | |
| 18 | E-mail (18) 4th inquiry for VAC Repayment | |
| 19 | E-mail (19) 4th inquiry for VAC Repayment | |
| 20 | E-mail (20) Lawrence Hilton | |
| 21 | (21) Letter from Lawrence Hilton | |
| 22 | (22) Scheduled Mediation | |
| 23 | (23) Declaration of Virginia A. Clark | |
| 24 | (24) Settlement Statement VAC Seal Beach | |
| 25 | (25) Mediator Report | |
| 26 | (26) Mediator Invoice | |
| 27 | (27) Response to Plaintiff's Motion for Instant Discovery | |
| 28 | (28) Defendant's Exhibit's 11312-01, 02, 03, 09, 17 | |
| | **Any necessary rebuttal Exhibits** | |

**2. Defendant:** The Defendant has not offered any trial exhibits at this time.

| Trial Exhibit Number | Title/Description | Objection |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| | | |

**J.**   **WITNESSES.**

**Plaintiff:**

**Will call:**   Keith D. Clark, Virginia A. Clark

**May call:**

**Defendant:**   The Defendant has not identified any witnesses to call at trial.

**Will call:**

**May call:**

**K.**   **JURY OR NON-JURY CASE.**

This is a non-jury case.

**L.**   **LITTIGANT'S ESTIMATES OF THE LENGTH OF TRIAL.**

One half day.

**M.**   **STATEMENT OF RELIEF SOUGHT**

1.   **Plaintiff:**   Respectfully requests that the Court enter judgment:

   a.   Finding Virginia A. Clark in Breach of Contract.

   b.   Finding Virginia A. Clark in receipt of Unjust Enrichment.

   c.   Finding Virginia A. Clark practicing Fraud by False Representation.

   d.   Order Defendant to pay Plaintiff $211,839.26 for reimbursement of funds Plaintiff paid to cover Defendant's debt obligation.

   e.   Order Defendant to pay Plaintiff $25,000.00 in interest on the monies owed to plaintiff since the sale of Property (March 4, 2010).

     f.      Granting Penalties against Virginia A. Clark for Fraud by False

           Representation.

     g.      Granting such other, further and different relief as the Court may

           deem just and proper together with the costs and expenses of this action.

**2.**    **Defendant:**   Has not provided any comment.

## STIPULATION

The foregoing admissions have been made by the Plaintiff, and the Plaintiff has specified

the foregoing issues of fact and law remaining to be litigated.

Dated this 24th day of January, 2012.

                 Respectfully submitted,

                 Keith D. Clark, Plaintiff *Pro Se*
                 5480 95th Street
                 Sebastian, FL 32958
                 (772) 559-4774
                 drkdclark@aol.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the original of this ~~Joint~~ Pretrial Submission has been filed

with the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

FLORIDA, Ft. Pierce Division, Clerk of the Court, a true and correct copy of the foregoing has

been furnished to Virginia A. Clark, 5960 Via Del Tecolote, Yorba Linda, CA 92887

electronically via Email address on record; all this 24th day of January, 2012.

Keith D. Clark, Plaintiff *Pro Se*
5480 95th Street
Sebastian, FL 32958
(772) 559-4774
drkdclark@aol.com

Service list:
VIRGINIA A. CLARK
Defendant *Pro Se*
5960 Via Del Tecolote
Yorba Linda, CA 92887



July 28, 2008



EXHIBIT 1

Virginia Clark
Keith Clark

*vclarkplus@aol.com*
*drkclark@aol.com*

RE:     **1900 W. LINCOLN AVENUE, ANAHEIM, CALIFORNIA**

Dear Virginia and Keith:

This letter will serve as a conditional offer to make a real estate loan secured by a first trust deed against the property located at 1900 W. Lincoln Avenue in Anaheim, California. This loan is subject to normal lender due diligence and requirements.

| | |
|---|---|
| Loan Amount: | $825,000 |
| Term: | 12 months |
| Interest Rate: | 9.60% |
| Monthly Payments: | $6,600 interest only, drawn from Borrower's bank account |
| Origination Fees: | $12,375 – 1.5 points to Lone Oak Fund, LLC |
| Option to Extend: | Up to 6 months for 1.0 point to Lone Oak Fund, LLC at WSJ Prime + 5.00%, not less than 9.60% |
| Junior Financing Permitted: | Yes |
| Prepayment Penalty: | None |
| Junk Fees: | None - Borrower pays all 3rd party fees including title and escrow |
| Closing Date: | Within 5 days from receipt of full package |

If Borrower needs more money, Lone Oak Fund, LLC will allow a second trust deed. Lone Oak Fund, LLC's offer to make the loan shall be made only by its submittal to escrow of its Real Property Loan Agreement and Escrow Instructions, executed by Lender.

Sincerely,

Gerald A. Ducot

GAD:jmt/ *Keith Clark, Virginia Clark - Anaheim (1900 W. Lincoln Avenue)*

**Accepted:**

Borrowers

_____
Virginia Clark                    Date

_____
Keith Clark                    Date

**To:** example@email.com

**Subject:** Re: Lone Oak extension

**Date:** Sun, Jun 14, 2009 4:58 pm

Hi, Keith -

EXHIBIT 2

Glad you got my news and it took a bit off your mind.  And your comment about paying down those lines of credit -- absolutely - last commission check I paid some down significantly, and they instantly dropped the credit line to match the new balance.  It's a catch-22 --  everyone has increased their interest rate, so you want to get them paid off, everytime you make a big payment, they drop the credit line, and then you get some rude note that your balance is too high of a ratio to your credit line (which it hadn't been until they lowered it).  When it happens, I try to tell myself that I was going to be paying it off anyway, but actually I would have preferred to keep the money in savings since now there's no emergency credit  available.  For example, I'd have enough $$ for the Lone Oak fee if I hadn't spent it paying down credit lines.  Okay, enough of my whining, but it's a mess nationwide not just with us, obviously.  I wonder how it will all end up, after the credit card companies lose their customers' respect.  I would think no one will have much loyalty to their credit card companies/bank lines of credit in the future.  The manager at my Washington Mutual/Chase said that they are trying to close out all of their existing home equity lines and make it miserable enough for people to give up and pay them off (if possible) as the rates on them are so low.  Mine is at about 4%, so it is one that I had paid down to be able to keep using, but they closed it instead.  Oh, well....we all just keep moving ahead.

If you get your records back up, will you check the Lone Oak numbers?  I believe we are at an 80/20 split on the loan, which if we are breaking down the 1 pt fee would put your portion at $1,650.00  I don't have the file in front of me -- I do remember we were going to end up at 80/20 and from your portion you had the small payoff on the Fidelity Loan, mimimal Lone Oak costs, and then your cash out.

Convertibles and boating sound wonderful!  We're resting up from the last rush of wrapping up the school year, spring soccer and the girl scout year.  The girls have only been on summer vacation since Friday and have already been to work with me twice.  That's the beauty of real estate.

Well, we're off to the next thing.

Ginger

I hope things are going well out there, they are anything but down here. I won't go into it now, as it is just upsetting, and not productive to spend any more time on it than I already have.

EXHIBIT 3

I am striving to remain optimistic about some projects that I am told will be happening in the next two weeks, but I have been hearing that since last September. I may honestly be at the point where I can not make the mortgage payment in Key Largo this month (not to mention the credit cards), and I have already resolved that I will not be making the $676.00 association payment.

I will be mailing you the $1650.00 for the Lone Oak extension this week dated for July 13. Please do not deposit it before that. The last check I sent you was dated July 30, and you deposited it July 26. That cost me $96 in overdraft fees, and WE are fortunate that it was not returned NSF, as I can imagine it may have caused our Lone Oak payment to be returned.

I know things are tough all over, and I understand we are no exception. I am struggling to keep from being financially ruined, which will probably include relationally and emotionally as well. I know I am LEGALLY responsible for the loan on Carl's, but have only received the benefit of 20% of the funds currently owed on it. I would really like to access another 5% of the total amount ($40K); placing us at a 25%/75% split. Is there any way you know of to access that amount?

0A
I am thinking probably not (I hope I am wrong), and I am also concerned about what we are going to do in six months when the Lone Oak note is due? Do you have a plan?

I talked with my mortgage holder on Key Largo, and they are sending me an application packet for a loan modification and/or possible renegotiation of the loan. Even though I am current and have a rate of only 5.75% they said that if I apply I may get it down to 4% (or possibly lower) if I can show that I can make the payments with all of my other debt if that mortgage is lowered. Unfortunately I think my credit card debt is too high to qualify.

I am going to call a credit counseling service today (this is when I received your Email) and will still do so once I send you this Email. I wanted the Lone Oak loan to roll-over before I get

any derog credit. (your new option could eliminate all of that)

I was going to discuss bankruptcy next, but I was saved by your Email ...

***Now for NEW questions based upon the above comment from your Email ...***

So for the sake of conversation, say we owe $825K (I owe $165K, and you owe $660K,. *roughly*), and we agree on a value of $1.8M - $2.4M (how will we arrive at the amount?)

I like $2.4M better. $800K=2 0buy in, $400K ea, I would be debt free (on Carl's) and net $235K (after credit cards [$180K] I would still have $50K FOR mortgage, HELOC, savings. you only owe $260K at what  6% ($1600/mo?)

At $1.8 the new partner buys in at $600K, which is $300K to each of us? I would see a net of $135K, and have no debt on Carl's, and you would still have $360K debt, but at a much lo wer rate, perhaps below the income generated?

**We would then each receive $2222.23/mo at the current rate? I am all over that! How soon can we start?**

 Let me know ... I like $2.4M (or more)

Keith

From: vclarkplus <vclarkplus@aol.com>
To: drkdclark <drkdclark@aol.com>
Subject: Re: Carls Jr/Lone Oak
Date: Wed, Jul 1, 2009 9:40 pm



EXHIBIT 4

Hey!  Thanks for the quick reply.  I am not always good with change, especially if it is not an option I have considered and had a chance to look at.  So while I was open to discussing options with Al this morning, I wasn't jumping up and down at the partner idea but I was willing to listen to details and present it to you.  After kicking it around and putting pen to paper, I really really like the idea as well.

I will call Al and tell him we are indeed interested.  I am unsure if he himself means to offer to become our partner, or if he has someone specific in mind.  I know one of his regular investors is the retired president of Kelloggs Cereal (or something similar) -- who he always says is not a bank, but has available money for specific opportunities.  Al himself has about 20 properties, residential and commercial, and is all business.  He works probably 100 hours a week, no kidding.  At our weekly office meetings, when listings are few, we all get told if we worked nearly as hard as he did, we'd have transactions.  And he is, of course, correct.

Back to the Carl's - I don't know what the value would be.  At a 5% CAP rate, the current rent would put it at 1.5 million.  Commercial is down, but thankfully not as much as residential.  Working with 1.5 million, a 1/3 partner would bring in $500,000, with $250,000 to both of us.  That would pay off all of your existing debt on the Carls, with a chunk of cash, plus still $2,222 a month rental income.  As you said, I would still have debt on the Carl's, but if the partner obtained the refi loan at an attractive rate, my share of the rent should cover my payment.  That would obviously be my hope.  In any case, I would be in a much better situation.  And at 2.1 million, the partner would be bringing in $700,000, or $350,00 each.  If the partner is Al, we'd be in a tremendous position for lease renegotiation.

So the first step will be for me to call him and ask him to pull numbers together.  He knows Lone Oak is due at the end of July, and that if we are extending the loan, we have to act by the 15th.

Honestly, after looking at this option, as long as the value is fair, I'm ready to do it asap.  It would be a tremendous financial and mental relief.  I'll keep you posted.  I know I've sent you Al's info, but if you need it again, just let me know.  And what phone number do you want me to give him if he'd like to call you?

I am very sorry my depositing your check was too soon -- I knew you had been specific that you were going to send two checks and not to deposit the extension money until the last minute.  When just one check came, I just wanted to get it in before the auto withdrawal.  Now that Washington Mutual is Chase, they seem to put a hold on absolutely everything, and we'd be sunk20if that hadn't cleared before the Lone Oak payment, and needing to keep the option to renew the current loan is critical.

I'll call Al this evening and keep you posted.  He either is way too busy and you get put on the list, or he moves extremely quickly.  He knows there is little time here, so I think he'll get started right away.

Ginger

-----Original Message-----
From: vclarkplus@aol.com
To: drkdclark@aol.com
Sent: Wed, Jul 1, 2009 2:40 pm
Subject: Carls Jr/Lone Oak

EXHIBIT 5

Hi, Keith -

I just met with Al Ricci, my broker, for an update on some business and we also went over the Carls Jr. lease and loan info.  This is nothing new - as he said before, since there is still over 2 years on the existing lease, he may not get far pursuing new terms right now, but he is willing to get negotations started.  He strongly recommends20we try to find a new loan instead of paying the point and extending Lone Oak for 6 months, but I explained that the reason we have Lone Oak is because we are not in a position for standard bank financing.  He asked that I check with you to make sure and discussed 3 basic options:

1.  ; Would be paying the point and keeping Lone Oak for 6 months.  That is his least favorite option.  However, it might be our best option for our current situtation.

2.  Getting a traditional commercial loan.  My FICO is nowhere near as strong as it had been for the past many years, so I am confident I would not be in a position to look into a bank loan.  How about you?  If you feel you are in a strong position, we may want to look into a new loan.

3.  His third option is to think about bringing in a very financially strong partner.  I will say this is not something I have considered, so I don't have the most open mind about it, but I will think about it.  He has investors with available cash who would not be interested in making a personal loan on the property, but would be interested in becoming a partner.  He himself owns almost all of his properties individually but says he  is a partner on a few business properties such as a local restaurant.  His basic scenario, without running all the numbers, was this example:

Bring in a strong partner who feels the property will20appreciate.
The current value of the property would then be divided by thirds, with each of us having 1/3 interest.  The new partner would pay in his 1/3 value, which would pay off all or  most of the existing loan on the property.  The new partner would be able to finance any of the remaining=2 0debt at a lower good credit bank rate, and the rental income would be divided into thirds.

**Subject:** Re: Carls Jr/Lone Oak, Part 2
**Date:** Wed, Jul 1, 2009 10:06 pm

Hi, Keith -

**EXHIBIT 6**

I just wanted to address the more personal comments in your e-mail but keep it separate from the "good news" Carl's partner idea. I had just met with an accountant yesterday to review my situation, and am happy to share what I learned, which may or may not help you. I haven't proceeded with talking to credit card counseling services or bk attorneys, although I have thought about it.

Per the accountant, most likely for both of us, bankruptcy would not be an option. Now, Florida laws may be different than California, but he said that even though I am broke, I have assets. And you can't quit claim a property to me (or me to you) in the case of the Carl's to lose that asset, as they go back 2 years to make sure you didn't do anything like that. In addition, he said they will check your bank accounts for those past two years to make sure you didn't get a lump sum of money and then "hide" it or give it to someone to keep for you.

As far as credit card debt, he said that he has seen people negotiate a payoff of 50% as pretty standard. In one case, because of the person's elderly age, they got down to 90% discount. However, he said that this will be considered a charge-off and really effect your credit. He said usually the credit card companies won't even talk to you until you are 2 months behind. Also, the amount that gets reduced is considered income, and you will have to pay t axes on it. So if $50,000 worth of credit card debt ended up negotiated down to $25,000, you will get a 1099 for the other $25,000 as income and he said end up paying about 30% taxes on it, depending on your tax situation.

Over here, things are very ugly as well. I believe CA, TX and Florida are the three states in the worst situation. The newer house has been for sale as a pocket listing, with no offers, and will most likely be a short sale, although it will be close. Rent on the old house would cover the mortgage on it, so I have been considering moving us into an apt. to keep our expenses down, and then moving back in about 2 - 3 years. If the Carl's Jr. partnership works out, I would not need to do that. I had planned to sell the old house as well, but after meeting with the accountant, by the time I pay commissions and fees and tax consequences, the amount of money I would actually get wouldn't be worth it. The Seal Beach property is currently in escrow, but the buyer seems a bit shady, so I don't know if that will close or not. I had not wanted to sell it, but was looking at the Lone Oak becoming due in another 6 months, and wanted to have some back-up plan. That is a completely different and ugly story - the local Seal Beach attorney had said it would be a slam-dunk to get a personal loan from a local on it and he kind of strung me along for the past few months and then said no,=2 0at which time he called every day asking to buy it privately for cash under market with me netting about 50K. I don't know if the Carl's partnership idea would allow me to keep the beach property, but most likely I would continue with the sale. I'm looking at keeping the old house and the Carl's Jr. I wouldn't mind a "fresh start", so to speak, but it appears I'm not poor enough to get one. Tell me if you hear differently. I hope all of the advice you get is good!

I'm off to call Al as I know he has meetings in the morning and I wouldn't be able to reach him until late -

The partnership sounds promising.

Goodnight,

Ginger

**Subject:** Re: Al Update?
**Date:** Fri, Jul 10, 2009 5:42 pm

Hi, Keith -

<div style="border:1px solid">**EXHIBIT 7**</div>

Sorry the buyers didn't buy -- but it sounds like your unit showed really well and the realtor sounds very positive and honest with her feedback. Over here, I did speak with Al, and then just followed up with him a minute ago. He has been working on the partnership idea, but there is nothing too new, so it's kind of mixed news. He said that he is waiting for a review from Citizen's Bank as far as lending on the property. He said he is looking at it as he becoming our partner and gave that scenario to Citizen's (his) Bank, but they are not comfortable because of the short amount of lease term left. Citizen's Bank said they would kind of give it special attention and have an answer on Monday, but Al said it could not happen (getting the loan) before the end of July when Lone Oak is due. I asked him directly about the extension fee due next Wednesday, and for right now he thinks we will have to take the 6 month extension to have time to work out a partnership arrangement, whether with him or someone else. He will see what kind of answer he can get from CKE, and also do the commercial comps for like properties. I kind of begged -- actually, I just said having to pay the point fee next Wednesday is a big hit, so what was his best advice. He said he'll do what he can and touch base on Monday, but it just needs more time.

While that's the frustrating news for now, I suppose paying the extension fee is not the worst option. On my end, I will have to hold off paying anything other than the extension fee, and hope we get everything resolved by the end of the month. The beach escrow doesn't close until mid-August, and that's only if all goes well. I would hate for us to pay for the 6 month extension and then be able to pay Lone Oak off in a month. But I am also glad we have the option to keep the loan.

What do you think about approaching Marian at Lone Oak about seeing if they could offer us any kind of reduced extension fee if we were going to pay the loan off within 2 months? I know it's a long shot, but perhaps worth asking.

I think keeping the Carl's Jr. is more important to you than to me. I know you have been very clear that it is your only stable source of income and you don't want to sell. So this question is regarding a partnership - Al had suggested the partner coming in and everything being split 1/3. If he is interested or willing to be a full 50/50 partner (and I don't know what he is or what any of the numbers will end up being), do you have any interest in selling, or would you have any objections if I sold my share? Like I said, I have no idea if that's even feasible, but I thought I'd get your thoughts. I think we'd need to know the property value first anyway.

I'm disappointed not to have a more definitive answer re: a partnership yet, but it does still look like it can all work out. I hate to pay the Lone Oak fee, but it would be all but impossible to pay the loan off in full right now.

It sounds like if you can make it through July and hopefully part of August, there's enough time to proceed with the partnership option.

Let me know what you're thinking, and I'll tell you what news I get on Monday. I would definitely think you'll have a pretty clear idea of what's going to happen before Jennifer gets back from Colorado.

On a totally different subject, mom said they are going back to see Heather and stopping by to visit you. Don't know quite when - they're leaving next week.

I'll e-mail as soon as I have any news.

Ginger

Sent: Monday, July 13, 2009 6:27 AM
Case 9:10-cv-81118-KAM   Document 48   Entered on FLSD Docket 01/24/2012   Page 21 of 58
To: Voorhees, Phil @ Newport
Cc: vclarkplus@aol.com
Subject: Keith D. Clark

July 13, 2009

EXHIBIT 8

# CONFIDENTIAL

Phil Voorhees
CB Richard Ellis
National Retail Investment Group
3501 Jamboree Rd.
Suite 100
Newport Beach, CA 92660

**RE:    Carl's Jr. Restaurant #46, 1900 West Lincoln Avenue, Anaheim, CA**

Greetings Phil,

I hope things are going well for you out on the Left Coast in California. I am currently about as far away from California as you can get and still be (arguably) in the US, in Key Largo, Florida. Many of us (me included) prefer to think of the Florida Keys as the *Conch Republic*. As they say down here, *it is an entirely different state ... of mind!* About the only thing I miss in California is the GREAT Mexican food.

I long ago decided I have no intention of returning to California. While Carl Karcher Enterprises (CKE) has been an excellent tenant for over 40 years (I could not ask for a better one), I am now thinking that I would prefer to be entirely out of California, including any real estate. I have spoken with my sister [Virginia Clark] at length about this. She understands my desires, and agreed to either the outright sale of the property or to find an additional or replacement partner.

You and I have not been in direct contact in several years. I believe our last face-to-face was in Irvine CA in possibly late 2002? Whenever it was, I was so impressed with you (and with the few subsequent contacts that I have had with your office) that I kept you in mind if I ever had the need to buy or sell commercial real estate. Now might be that time.

To be completely open with you, my sister [Virginia Clark] sells (attempts to) residential real estate in one of Al Ricci's (perhaps you know him) offices in So. Cal. I had a long conversation with Virginia over the weekend and I told her that I wanted to discuss things with you. She agreed. So here we go ...

We are thinking of selling the property at 1900 West Lincoln Avenue, Anaheim, CA that has had a Carl's Jr. on it for over 40 years. You could not ask for a better tenant, though possibly a bit on the low side revenue wise. We currently have 2.5 years remaining on their lease. It is $80K/year NNN.

I request at this time that the interest I/we have in selling be kept CONFIDENTIAL and not disclosed or discussed this anyone without our expressed permission.

I just sent our contact person [Ree Ryan] at CKE an inquiry as to whether or not CKE would be interested in buying the property. Ree's contact info is:

> Ree Ryan
> Carl Karcher Enterprises
> Real Estate Asset Manager
> 401 W Carl Karcher Way
> Anaheim, CA 92801-2409
> 714 774-5796
> rryan@CKR.com

If CKE is not interested in purchasing the property, or their valuation is too low, the next option is obviously to put the property on the market, or find a new partner.

Virginia says that Al Ricci has expressed some interest in becoming a partner with her and me, or perhaps replacing one of us. Virginia has not discussed the possibility of actually selling the property with him.

This is where things are a bit sticky. Obviously with Virginia working in a real estate office and her boss offering to possibly buy in (we have $825K out in a bridge loan at 9.6% due July 31, 2009, and do have an option to pay 1 point by July 15, 2009 for a 6 month extension) as a partner, we are somewhat subjected to his valuation of the property.

That is what got us talking over the weekend. It turns out that neither one of us really want to keep the property any longer. The option of a partner was Al's option to possibly bring some much needed cash into the situation. Again, we/she has not discussed purchase options with Al, as we only arrived at this conclusion to sell Sunday.

That brought up your name. Without investing a lot of time and research do you have any idea what this property might be worth, particularly with a desire to sell quickly? We know prices are down for selling the Anaheim property, but it may be the best way to get cash out and possibly reinvest into other properties that are at generational lows in price (certainly here in Florida).

I believe the vacation rental property I have in Florida will continue to out perform CKE, and I would prefer to lower my debt and possibly acquire another property in Florida, depending upon sales price.

I was considering selling a condo at $200K loss (real equity loss, not on paper), but when you do the numbers it returns more than CKE even in this market. I would prefer to get out of California, CKE, take advantage of lower capital gains and avoid whatever else California comes up with to discourage business, and pay down my outstanding debt and other assets.

I will follow-up on this Email with a telephone call to you today [Monday July 13, 2009] after lunch PST. You may al so reach me any time on my cell phone at: 772-559-4774.

I appreciate your time and expertise, and look forward to your thoughts and response.


Regards,

Dr. Keith D. Clark
5480 95th Street
Sebastian FL 32958
Phone/FAX (772) 589-9086
E-Mail drkdclark@aol.com

From: Voorhees, Phil @ Newport <Phil.Voorhees@cbre.com>
To: drkdclark@aol.com
Cc: Read, Megan @ Newport Jamboree <Megan.Read@cbre.com>; Toomey, Patrick @ Newport Beach
<Patrick.Toomey@cbre.com>
Sent: Tue, Jul 14, 2009 3:39 pm
Subject: RE: Keith D. Clark

<div style="border:1px solid black; display:inline-block; padding:4px;">

**EXHIBIT 9**

</div>

Keith,

Thanks for your patience...I apologize for not getting this out to you last evening as promised, but took a quick trip by the property to have a visit before typing this email.

To start, this is a great, clean, very desirable property. Smaller, "single-tenant" type properties have continued to sell well at pricing not far from 2007 record levels as "all cash" buyers chase yield not available in the bond or stock markets with comparable security. While this is a terrible market for generalizations, it's safe to say that larger properties requiring new financing are just not moving. Transaction volumes are less than **20%** of record levels in 2006 and 2007.

With just **2.5** years remaining on the lease term, the highest-price buyers seeking simplicity and income security will not be attracted to the property despite Carl's established history in this location. Accordingly, I recommend granting Carl's a new **15 or 20** (20 would be better) year lease starting at **$80,000** per year, and increasing 10%-12% every five (5) years. With a new/extended lease in place, I suspect this property will receive great interest from potential purchasers, and trade with 5% of the "all time" record pricing of 2006 and 2007.

Assuming the extended lease would be in place, if I owned the property myself I would recommend pricing as follows (more detail provided in the attached PDF file):

List Price:                  5.25% cap rate, $1,524,000
**Probable Sale Price: 5.75%** cap rate, **$1,391,000**
Low Price:                 6.25% cap rate, $1,280,000

At these very low cap rates, the purchaser will need to be "all cash/no loan" as financing would be in the mid-7% range, and create negative leverage. Two years ago, I would have expected **15-20** offers at this pricing. In this market, we might see as many as **5** offers, but as we all know, it only takes one buyer! To date, my team has sold about 350 properties totaling more than $5 billion in value, and we've been able to find "needle in the haystack" buyers more of than not due to our broad, cooperative, systematic marketing approach.

With regard to timing, I generally do not recommend marketing from June through August, or from mid-November through mid-January due to summer travel, holidays, and distracted investors. This being said, I believe that pricing is about to fall through the floor. We are seen an obscene amount of default activity from banks and "special servicers". Those properties will start hitting the market in the 4th quarter of 2009, or the 1st quarter of 2010 at the latest. When they do, cap rates will jump up. At some point, probably in 12-36 months, inflation will gain traction, too, which will further soften pricing. While I consider myself an optimistic guy by nature, I believe nearly everyone is underestimating the magnitude of the pain that is about to beset the commercial real estate market. For this reason, I recommend getting out to market ASAP if you and Virginia elect to sell.

Cost wise, since this is a very small transaction, our commission would be the standard 6.00%. If my team represents both buyer and seller, we could cut the commission to 5.00%. I would also request a $3,950 reimbursement for an extensive postcard marketing campaign to 7,500 investors around California. I typically send 3,500 or so, but this small property has good potential for a "bidding war", and I believe maximizing exposure through direct mail will more than offset the cost in the ultimate price achieved. We can discuss the marketing approach more when we speak.

I am around all day, Keith, with the except from 3:00-4:30 when I am giving a presentation on the state of the retail investment market in SoCal. Otherwise, get me anytime on my mobile at **(949) 307-0728**.

Thank you again for considering me and the team!

Philip D. Voorhees | Senior Vice President
CA DRE License | 01252095
CB Richard Ellis, Inc.
3501 Jamboree Road, Suite 100
Newport Beach, CA 92660
T 949 725 8521 | F 949 725 8545
phil.voorhees@cbre.com | www.nrigwest.com

For Self-Service access to all of our listings, please visit: **www.nrigwest.com**

From: vclarkplus <vclarkplus@aol.com>
To: drkdclark <drkdclark@aol.com>
Subject: Re: Update/recap
Date: Tue, Jul 14, 2009 1:23 am

**EXHIBIT 10**

Hi, Keith -

I do not have anything new to report tonight --- I just wanted you to know I saw your emails to Ree and Phil, and they were great. Of course I want you to cc me, as you are doing, but I don't think I should speak with either of the gentlemen until we know where things are going with Al. I'm impatient to get a valuation, since that's the foundation of any deal. Mom and dad are stopping by as they leave on their trip tomorrow morning. I'm going to see if anything is new after that; if I don't have any success reaching Al, I'll just pop by his office, but of course he can easily be out with clients. Worst case, Wednesday morning I can be in the office by 8:30, so I can catch him before the office opens up for business.

Thanks for handling the renewal fee with Marian at Lone Oak. I agree it would be nice not to have pay the full point now, but at least we can extend and possibly get a partial refund. I would like all of this to be wrapped up in July, much less in 3 months, but I know that's impractical. I did deposit your renewal fee check late this afternoon.

About an auction - that's a hot marketing technique out here right now, but with really mixed success. Basically, all of the buyers are looking for a steal, and expect an auction property to be a distress sale. It would not be my choice of how to proceed. If the commercial property gets marketed with signage and on LoopNews, the huge commercial website, and you have an experienced agent with contacts, you'd probably do better with more realistic buyers. But ask your experts, like Phil.

I feel confident that by knowing we are willing to sell if that's the best option, plus the possible partnership idea, we have some really good options ahead of us.

I'll keep you posted over here - hope all is well!

Ginger

To: drkdclark@aol.com  14135-JEM  Document 48  Entered on FLSD Docket 01/24/2012  Page 27 of 58
Subject: Re: Carl's thoughts
Date: Sun, Aug 9, 2009 12:03 pm

Hi, Keith -

EXHIBIT 11

What a nice e-mail - thanks - I think I will have to find my own version of your Blue Boat.  When I get up at 2 in the morning, I wander about a bit and check on the girls and then read for an hour or so.  I like your way of handling sleepless nights better.  As far as Seal Beach, there is nowhere near 500K equity, so paying off all of my Lone Oak is not an option.  However, as I said, I am willing to sell if we can make it break even for me, which may be very possible.  Timing wise, I'm sure what will happen is that we'll move ahead with Phil and then Al will take a moment and "get back to us".  Oh, well.  Timing is everything.  Once you speak with Phil again and see his new thoughts, if you feel you're ready to list, then would be an easy transition for Phil and I to meet, and yes I can bring up the pocket listing and referral fee.  If you want to do anything specific regarding Ree or calling other corporate fast foods, let me know which part of the workload I can do.  The girls and I went by Seal Beach Friday, and the tenant is not happy -- he hasn't had a rent increase in 9 years and is under market, so the buyer had said he can stay but there will be a rent increase.  I think they're both engaged in a bit of a pissing contest.  Obviously the buyer has more leverage.  Well, enough for e-mails this morning -- I'm just getting the girls up so we can get to the office and prep for today's showings.  I don't mind working hard - I just hope the transactions close!  Enjoy the rest of your weekend and all of the condo news sounded great!

Ginger

From: vclarkplus@aol.com
To: drkdclark@aol.com
Subject: Re: Carl's offer
Date: Wed, Nov 11, 2009 7:59 pm

EXHIBIT 12

Good afternoon, Keith -

I did not mean to start an argument with you by asking you to call me.  First of all, I am unaware that that the current offer needed to be accepted by 5 o'clock today.  The e-mail I received from Pat simply said that he would be reviewing the offer today and he suggested we do the same and that if we did not have an attorney available to review the contract, he could suggest an attorney. Pat is representing both sides on this deal.  NOWHERE DID THE E-MAIL SAY YOU NEED TO REPLY BY FIVE O'CLOCK.

I think some things are better discussed voice to voice than by e-mail.  I have not heard back from you when I sent you e-mails and think we just need to talk about how we think this listing is going and our plan B.  I agree with you that we are not in a position to keep the Carl's Jr, and I am not attempting to keep the property for another two years.  That's why I wanted to talk to you.  All of your refi points are valid; I'm just trying to figure out if the best offer is a million dollars which is a total wash, what we do.  In that case, I was trying to figure out if we keep the property if your $3333.33 month rent less loan payment is enough for you to live on. I can't imagine being able to refi.  And I am the one who told you Lone Oak had said they would do a new loan if it were a lower amount; that was months ago now; who knows what their current guidelines are.  WHAT I AM TRYING TO DO IS FIGURE OUT WHAT OUR OPTIONS ARE SINCE WE ARE NOT GETTING THE NUMBERS KICKED AROUND TWO WEEKS AGO.

I am sorry that you are resentful, as you put it, for the position you feel I have put you in.  I suggest we do not pursue beating me up but instead focus on moving forward with feasible options.  I realize that you and Phil Voorhees and possibly Pat have a stronger relationship than they do with me, and I want to make sure I understand what is happening before everyone expects me to accept an offer.

If you can call me tomorrow, I would like to have the chance to talk about where we think this is going to go, or what our revised bottom line is.

Thank you,

Ginger


-----Original Message-----
From: drkdclark@aol.com
To: vclarkplus@aol.com
Sent: Wed, Nov 11, 2009 5:56 pm
Subject: Carl's offer

Hi Ginger,

I am writing you because I am never quite sure when we can catch up, so here are my thoughts:

I know you have made reference to her $50K short to close on the $1.3M offer, so it is safe to assume $80K short on the $1.225M. Clearly whatever you are short will be covered out of my proceeds, and while I am far from thrilled about it, that is the reality of the situation.

From what I have read in past Emails I believe your preference is to hold on to the property for another 2+ years to sell. That is all but impossible as I see it. I see the value dropping NOW (while we are sleeping), and this unexpected spike in price should certainly be taken advantage of.

If I am correct these are the premises you base keeping CKE upon:

1. That we can get refinanced.
2. That the value of the property will increase.
3. That CKE will want a new lease.

Whether or not these are correct, here are my responses to those three:

1. I can not imagine how we can get refinanced? People and companies with perfect credit can't get refinanced. My credit is crashing. I already have 30 day lates, soon 60 day lates, until I get 150 day lates. Basically I have no credit (some okay, but lots currently crashing).

Sure, I suppose there may be some double-digit interest rate available, but even then doubtful that they would cover the $825K owed.

As I calculate it you are negative $2K/month currently, or $50K over the next 2 years IF we can get refinanced at the CURRENT loan rate. If we can't refi we loose the property in February (3 months)

2. ASSUMING #1 is possible, I do not see the property appreciating, but dropping further over the next 2 years.

3. Certainly a new lease from CKE would help, but we must act as though they will not renew, particularly since that is what they told us.

To expand further:

Even with a new lease it will be *maybe* a 15% increase, from $80K/year to $90K-$100K/year?

I know I can continue making my current $1320/mo payment out of my $3333.34, but if you can not make your payment then 100% of the income does not cover the current payment, and I can not live without that income. This continues to rely upon us being able to refi at the current rate and amount (which I highly doubt).

IF we were to be able to refi for the next 2+ years, and Carl's does not renew, and the value drops to less than the loan amount, then I have nothing!

I understand that if we accept an offer of $1.225M you end up owing me $80K-$100K, and I leave with maybe only $350K, but that is way better than nothing.

I have been more than fair in allowing you to borrow against my equity. Indeed there is some resentment on my part now. I would much prefer to have the cash I am going to have to use to pay off your debt rather than buy myself a place to live. I am looking at $800/mo apartments to rent, rather than buying one for $100K, because you will have my money tied up paying off your debt.

How do you propose we proceed? Should we accept the $1.225M offer? I proposed a counter offer of $1.265M, hoping to arrive at $1.25M.



I can cover what you are short. We could then place a 2nd TD on Seal Beach for the amount at 8% amortized over 30 years, payable in 5 years? Tyhat would be significantly less than the $2K/mo you are having to subsidize CKE currently.

Much of this may be a mute point, as the offer of $1.225 expired at 5PDT.

I look forward to your thoughts.

Keith



**First American Title Insurance Company**
**National Commercial Services**
5 First American Way • Santa Ana, CA 92707

EXHIBIT 13

### *Seller's Final Settlement Statement*

**Property:** 1898 West Lincoln Avenue, Anaheim, CA

**File No:** NCS-417681-SA1
**Officer:** Kathleen Huntsman/gcr
**New Loan No:**
**Settlement Date:** 03/04/2010
**Disbursement Date:** 03/04/2010
**Print Date:** 3/9/2010, 2:25 PM

**Buyer:** Nian Chang Chan Chen; Nian Zhu Chan Chen; Steven T. Shih Defined Benefit Pension..
**Address:** 1406 Walnut Street, San Gabriel, CA 91776
**Seller:** Virginia Clark; Keith Dana Clark
**Address:** 5960 Via Del Tecolote, Yorba Linda, CA 92887

| Charge Description | Seller Charge | Seller Credit |
|---|---|---|
| **Consideration:** | | |
| Total Consideration | | 1,000,000.00 |
| | | |
| **Prorations:** | | |
| Rents 03/04/10 to 04/01/10 @$6666.67/mo | 6,021.51 | |
| | | |
| **Commission:** | | |
| Commission Paid at Settlement to Kotai Realty Inc. | 30,000.00 | |
| Commission Paid at Settlement to CB Richard Ellis | 40,000.00 | |
| | | |
| **Payoff Loan(s):** | | |
| Lender: Lone Oak Fund, LLC | | |
| Principal Balance   - Lone Oak Fund, LLC | 825,000.00 | |
| Interest on Payoff Loan 02/01/10 to 03/05/10 @ $412.500000/day - Lone Oak Fund, LLC | 14,437.50 | |
| Reconveyance Fee   - Lone Oak Fund, LLC | 45.00 | |
| Statement Fee   - Lone Oak Fund, LLC | 30.00 | |
| Wire Fee   - Lone Oak Fund, LLC | 35.00 | |
| | | |
| **Title/Escrow Charges to:** | | |
| Closing-Escrow Fee - First American Title Insurance Company National Commercial Services | 1,150.00 | |
| Policy-Standard ALTA 2006 Owner's - First American Title Insurance Company National Commercial Services | 2,108.00 | |
| Record Grant Deed - First American Title Insurance Company National Commercial Services | 15.00 | |
| Documentary Transfer Tax-County - First American Title Insurance Company National Commercial Services | 1,100.00 | |
| Record Reconveyance(To Follow) - First American Title Insurance Company National Commercial Services | 20.00 | |
| | | |
| **Disbursements Paid:** | | |
| NHD Report to JCP-LGS Reports Natural Hazard Disclosures | 89.00 | |
| 100% Sale Proceeds to Keith Dana Clark | 79,948.99 | |
| | | |
| | | |
| **Totals** | 1,000,000.00 | 1,000,000.00 |

From: drkdclark@aol.com
To: VClarkplus@aol.com
Date: Mon, Apr 26, 2010 2:44 pm
Attachments: 2010_03_04_-_Settlement_from_First_American.pdf (1476K)

<div style="border:1px solid black; display:inline-block; padding:4px;">EXHIBIT 14</div>

Hi Ginger,

I have been way too busy over the past few weeks trying to keep things going here.  Between getting taxes filed, negotiating with creditors, 10 days with a UTI, and having to deal with ongoing care issues and finding an attendant and one day just runs into the next.

I know we need to establish how you can repay the monies owed to me from the sales of the Carl's location. Do you have anything particular in mind?

I hope these two months have given you some breathing room and a chance to catch up on things. How are things proceeding with the Seal Beach property?

Here is what is going on with me:

Jen moved out in November, but told me two weeks ago she will be moving back in May 3 for the month of May, then moving to Colorado. She has been paying $1000/month towards the mortgage and household expenses, but that will end in May as well.

The house remains listed at $399K, but no offers at all. The agent initially thought $350K, but in any case no offers, and only a couple of showings in 5 months. Basically the season is over here.

I really do not want to sell. The house is beautiful and set up extremely well for me. I may look into getting a roommate this summer once Jen is gone. I don't like the idea at all, but I need the income.

Jen and I have discussed and agreed that she has half interest in the house and half of the equity (if there is any in this market).

Obviously I no longer have the income from CKE that I have been living on, and I am doing everything I can to replace it. With Jen gone I have $1000 less, and I have been paying $500/month out for my personal care every month. At this rate I can perhaps last until October (if nothing changes).

From what I can make of the closing statement it appears that I paid on your behalf:

| | | |
|---|---|---|
| $160,000.00 | Lone Oak Fund | |
| $ 11,550.00 | Lone Oak Principal Balance | |
| $ 35,000.00 | Commissions | |
| $ 2278.50 | Misc Fees | |
| $ 3010.76 | Rents | |
| **$211,839.26** | **Total** | |

I am open to discuss options for you to repay this money. Obviously sooner is better. I am paying interest daily on my balances, and the opportunity cost is huge right now. If you can repay it in a large sum I will buy another condo to either rent out to get a cash flow again, or possibly move into it if I sell my house (again, I prefer not to).

One option I have thought of is to file a mortgage on your Seal Beach property for the total amount (if the value will support it, and add your house if it does not), with the same interest rate as Lone Oak originally [9.6%]. We could amortize it over 30 years, due in 36 months. The payments would be about $1800/month (Less than you were paying to keep up the Lone Oak payment), and restore my cash flow to about where it was with CKE, allowing me to stay in

my home. What do you think?

Regards,


**Dr. Keith D. "Kase" Clark**
9611 N US Hwy 1, #301
Sebastian FL 32958  USA
Phone: 772-559-4774
drkdclark@aol.com

To: VClarkplus@aol.com
Subject: Mortgage option or ?
Date: Tue, May 11, 2010 8:49 pm

Hi Ginger,

EXHIBIT 15

It has been a couple of week since I last wrote you and I have not heard anything back. I do not have the luxury of just letting time pass by and so I need to be proactive on things. Do you have any options/thoughts on how you can repay the money I paid on your behalf to Lone Oak, or should we proceed with the mortgage/payment option I proposed on the Seal Beach property?

I look forward to you reply,
Regards,

**Dr. Keith D. "Kase" Clark**
9611 N US Hwy 1, #301
Sebastian FL 32958  USA
Phone: 772-559-4774
drkdclark@aol.com

To: Ginger Jacobs <ca4pus@aol.com>
**Subject:** I need to hear from you
**Date:** Sun, May 23, 2010 9:56 am

Hi Ginger,

EXHIBIT 16

It has been almost two weeks since I last wrote you and I have not heard anything back. I need to hear from you!

I received initial notice of intent to foreclose on my Key Largo condo, but have accepted a very low offer on it to prevent that. I am waiting to see how that all works out. It may not have to be a short sale, but I may need to bring money to the closing.
Jen moves out June 4 for Colorado.

We lowered the price on the house in Sebastian to $375K. I do not want to sell or move, but without the CKE income it is only a matter of time before I will be forced out.

I am strongly looking at the roommate option once Jen moves, or possibly treating the house as a duplex and renting out the 2 bed/2/bath side and all of the kitchen and living area, and I will stay on the other side with my bedroom, office and bathroom (no kitchen or laundry).

Obviously I am not thrilled about any of these options.

We both know why I am in this position. I have never bought a new car or extra houses. I have never passed any judgement on you and your "lifestyle" choices, nor am I now. As I have always told you, "I don't care what you do, as long as it does not affect me." Certainly the economy is not your fault, and you can live in a castle or a car, I don't care, the choice is up to you, as long as it is not affecting me.

Now about the current situation...

I trust you find my figures showing that I paid $211,839.26 on you behalf correct. The $1800/mo interest only payment plan saves you money over the previous payment to Lone Oak, and it gives me a reduced but manageable cash flow to stay in my house.

Is there a problem with this? You have not responded in any way.

I am extremely offended that you ignore me. You appear to me living in a much larger, nicer, more expensive home than me, driving a newer car (my van is 9 years old with 150K miles), and still own an income producing rental property, yet you owe me over $200K and make absolutely no attempt to repay it!

With that $200K I could buy 4 houses and have $3K/mo income here. That is opportunity cost! My offer for you to just pay $1800/mo just allows me to scrape by, not improve my asset base.

I am offended that I am having to beg you for the money I paid on your behalf!

I need to hear from you before June 1st!

Please, I need to hear something from you before June 1st!
Ginger, this can not be ignored. If we do not get something worked out I will seek legal remedy. It will no doubt cost money, and you will have even more problems.

Perhaps you need to right-size your life to live comfortably within your means? I moved to Florida to do so. It appears I have been unwillingly/unknowingly subsidizing your lifestyle. I really don't care. I just want my money so I can stay in my home.

long ago that my income options were very limited due to my disability. I make financial choices with that in mind. (That is why I never buy a new car).

I just want my money so I can stay in my home. Not for a new home, not a new car (though I will need to replace my van eventually), not a new boat or vacation. I have house payments and attendant care (along with normal food, clothing, gas, insurance and utilities) to pay for, nothing lavish.

So what can you tell me about how you can go about repaying me?

Are you going to sell your house? Is it already listed? If not, why not?
What is going on with the Seal Beach property? Is it sold, for sale, in court?
Are you going to move? Rent is probably much less than your house payments, maintenance and utilities.

I really do hope everything is going well for you. I wish you nothing but the best in all of your endeavors. I do not want to involve you in any of my challenges here, but being that you basically have all of my money tied up I am reliant upon you to keep me from losing my home.

Please, I need to hear from you, preferably with a plan by May 31.

Regards,

*Dr. Keith D. "Kase" Clark*
9611 N US Hwy 1, #301
Sebastian FL 32958  USA
Phone: 772-559-4774
drkdclark@aol.com

**To:** clarkplus@aol.com
**Subject:** Why no response?
**Date:** Wed, Jun 30, 2010 10:31 am

Ginger,

EXHIBIT 17

What is up? You have not responded to any emails. What is your plan? I REALLY need to know.

It has been over a month since my last email and I have still heard nothing from you.

My monthly disability payment barely covers attendant care, utilities, and whatever is left over is split between food and fuel. The $1800/mo will keep me in my house. I am okay for July, but that's it.

This is ridiculous that I am begging you for the money you owe me. I have a perfect waterfront condo I can buy for $80K and not have a mortgage. That is less than 1/3rd of what you owe me, but instead of buying it I am looking at defaulting on my mortgage.

I absolutely need to hear from you by July 5th or I am telling this whole story to the entire family, and turning it over to an attorney. Please don't force me to do this, and do not think I will not.

You have said in the past that you accept responsibility for this financial nightmare you have created for yourself, well fine, but get me my money.

I have had a comfortable life living within my means, MY lifestyle choice. I want to continue that. apparently you have lied to me for quite awhile about how capable you have been to make payments. I need my money.

I have been MORE than patient. I have even offered to accept payments for 3 years, but have heard nothing from you.

Please, contact me.

**Dr. Keith D. "Kase" Clark**
9611 N US Hwy 1, #301
Sebastian FL 32958  USA
Phone: 772-559-4774
drkdclark@aol.com

To: aclarkplus@aol.com85-JEM    Document 48    Entered on FLSD Docket 01/24/2012    Page 37 of 58
Cc: beachbag1@yahoo.com; bemommy@yahoo.com
Bcc: Jendsears@aol.com
Subject: Very Sorry
Date: Tue, Jul 6, 2010 1:11 pm

EXHIBIT 18

Well Ginger it has been over four months since we sold the Anaheim property. With it went both my monthly income and now well over $225K that was/is owed to me.

You have not once even said thank you to me for paying of that debt for you. A debt that I never wanted or received any benefit from.

You have made absolutely no attempt to contact me, much less reply to my emails (in spite of the dire situation I have outlined and now find myself in, 100% because of YOU).

You have never made any comment at all. Not I can't pay, I won't pay, I don't owe, nothing. According to you there is absolutely no problem with you paying the additional $2000/mo+/- (on top of what you were receiving monthly from CKE) that you were paying to Lone Oak on the loan you had. So imagine my absolute shock when you refuse to pay me an even lesser monthly amount until you can get me the balance.

You have obviously lied to me for years about how able you were to manage your debt, right up until six months ago. At the very least you should be ashamed.

When I mentioned selling the Anaheim property several years ago (when you claimed it was worth over $2M) you said you "will never sell, and will be putting the girls through college using that property". More recently you have made claims that I refused to sell, and that has simply never been true.

I hope the girls continue to get good grades and can get some scholarships, as you certainly will not be in any position to help them out.

Just as you have chosen not to so much as show me common decency that you would show a stranger off of the street, I am now going to pursue you legally with every option I have available.
I may end up living in a nursing home in the near future, but be assured that I will have plenty of time to devote to attempting to recover my money and legal fees from you.

Of course another option is that I move in with you since you still have a house, but I think I prefer you selling it so that I can keep mine. After all, that is what you are telling me to do, sell my house because you refuse to pay me (or even try, much less explain) what you owe me, so that you can enjoy your excessive lifestyle.

You have become the most destructive thing in my life. Hard to say whether breaking my neck and becoming paralyzed was worse, or having my own sister take all of my money and leave me for a nursing home.

You are an embarrassment as a person.

You will never hear from me again, you will however receive plenty of legal problems.

Subject: Law suit
Date: Tue, Oct 19, 2010 10:47 am

Ginger,

**EXHIBIT 19**

I am very disappointed that you have chosen to not respond to any of my Emails over the last seven months.

I have experienced financial hardships which are 100% do to you and you alone. In spite of every question I asked of you over the years you constantly assured me that there was no problem financially keeping up your obligations. As you bought a new car, an additional house and remodeling you always assured me there was no problem.

Now that the asset has been sold, my monthly income from it stopped (for seven months now), and the over $200K I paid out on your behalf, I am facing financial ruin.

As I wrote you over a month ago I have my wonderful Fiancee Cheryl who I would love to be with, and would be now, but financially I am unable to make that happen. We look forward to being married in June, and we are both cutting every corner possible to survive and move forward, meanwhile you owe me over $225K!

You had told me last year that it was your own fault, "*Living like a Rock Star*", and that you were taking responsibility for that. How about taking responsibility for the money you owe me?

You refuse to even communicate with me. From what I know you still have a very large expensive house, a commercial property, a house filled with antiques (including cut glass and a piano), two cars (the van I drive is 18 years old) and a job. So why can't you send me some money?

You have not left me any choice. Not only am I now broke and in debt, I will have a huge tax liability for money I never received.

I have completed the Complaint against you and will be filing it in court this week unless I hear from you and you have some acceptable options for me.
This is not going away by you remaining silent.

Govern yourself accordingly.

Keith

**Dr. Keith D. "Kase" Clark**
9611 N US Hwy 1, #301
Sebastian FL 32958  USA
Phone: 772-559-4774
drkdclark@aol.com

# O'NEIL LLP

### ATTORNEYS AT LAW

19900 MACARTHUR BOULEVARD, SUITE 1050
IRVINE, CALIFORNIA 92612
(949) 798-0500 • (949) 798-0511 (FAX)
EMAIL: counsel@oneil-llp.com

EXHIBIT 20

DEAN DUNN-RANKIN
SANDRA A. GALLE
WILLIAM E. HALLE
ANDREW K. HARTZELL
LAWRENCE J. HILTON
JOHN D. HUDSON

DENNIS D. O'NEIL
JAY F. PALCHIKOFF
PAUL A. ROWE
WILLIAM L. TWOMEY
JOHN P. YEAGER

SPECIAL COUNSEL
JENNIFER SUN
JOHN M. WHELAN

June 4, 2010

**RECEIVED October 20, 2010**

Dr. Keith D. Clark
9611 N. Hwy. 1, #301
Sebastian FL, 32958

**VIA Email**

> Re:   **Virginia Clark**

Dear Dr. Clark:

This office represents Virginia Clark.  Your e-mail of May 23, 2010 and a string of prior e-mails to Ms. Clark have been passed on to me.  Ms. Clark asked me to get involved because of the reference in your e-mail to possible legal action concerning the sale of the Carl's Jr. ("CKE") property.

I have reviewed the background regarding the CKE property and have advised Ms. Clark that she has no legal liability to you.  Your claim appears to be based on the fact that several years ago Ms. Clark took equity out of the property, leaving her with a larger share of the loan balance.  Aside from the fact that Ms. Clark also paid a much larger share of the loan for many years, that issue is irrelevant in light of the circumstances under which the CKE property was sold.

There is no serious dispute that the recent real estate market is the worst market since the Great Depression.  Nevertheless, it was at your insistence that the CKE property was sold at a fire sale price due to your personal financial needs.  Ms. Clark had no legal obligation to agree to the sale, but she cooperated with you in an effort to help you in your time of need.  At no time did you ever indicate to Ms. Clark that you would hold her responsible for the shortfall that occurred as a result of your decision to sell in a depressed market.  Had you so informed Ms. Clark, she would have exercised her legal right to hold on to her interest in the CKE property until market conditions improved, which would have obviated any shortfall.

You should also know that Ms. Clark's residence in Yorba Linda was lost to foreclosure and the Seal Beach property also has been sold.  These are matters of public record, but I would be happy to provide documents verifying the transactions at your request.

6/4/10  13114.1
H&O: #86115 v1

Dr. Keith Clark
June 4, 2010
Page 2


     I trust that the foregoing will fully resolve this matter.   However, if you believe any further communication is necessary, please direct all inquiries to the undersigned.

                     Very truly yours,

                     Lawrence J. Hilton


LJH/jt

cc: Virginia Clark

**From:** Larry J. Hilton <lhilton@oneil-llp.com>
**To:** drkdclark <drkdclark@aol.com>
**Cc:** vclarkplus <vclarkplus@aol.com>
**Subject:** Virginia Clark
**Date:** Wed, Oct 20, 2010 8:33 pm
**Attachments:** DOCS-#86120-v1-LTR_TO_DR__CLARK_RE__SALE_OF_CKE_PROPERTY.PDF (71K)

EXHIBIT 21

Dear Dr. Clark:

This office represents Virginia Clark.  On June 4, 2010 we sent you a letter by mail responding to your assertions about potential legal claims against Ms. Clark.  Based on recent e-mails you have sent to Ms. Clark, it appears that you may not have received the letter.  I have attached it for your information.

Please feel free to contact me if you have any questions.

Very truly yours,

Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Blvd.
Suite 1050
Irvine, California 92612
Phone (949) 798-0500
Fax (949) 798-0511
e-mail: lhilton@oneil-llp.com

LAW OFFICE OF
## BRENNAN & KRETSCHMER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
1443 TWENTIETH STREET
SUITE A
POST OFFICE BOX 520
VERO BEACH, FLORIDA 32961-0520

EXHIBIT 22

H. RANDAL BRENNAN †*
FRED L. KRETSCHMER, JR.

TELEPHONE (772) 778-3777
FACSIMILE  (772) 778-3835

†BOARD CERTIFIED CIVIL TRIAL LAWYER
*CERTIFIED CIVIL MEDIATOR

December 22, 2011

VIA EMAIL & US MAIL

Keith Clark
5480 95th Street
Sebastian, Florida 32958
drkdclark@aol.com

Virginia Clark
5960 Via Del Tecolote
Yorba Linda, California 92887
vclarkplus@aol.com

Re:   Clark v. Clark
District Court mediation
Date of Mediation: Tuesday, January 3, 2012 at 10:00 a.m.
Location: Brennan & Kretschmer, 1443 20th Street, Suite A, Vero Beach, FL

Dear Counsel:

This letter will confirm that a mediation has been scheduled with the undersigned as mediator beginning at 10:00 a.m. on Tuesday, January 3, 2012.  The location of the mediation is referenced above.   If it becomes necessary for you to change the date, time or other details of the mediation, please contact my office as soon as possible.

This letter will also confirm that the mediator's fee for this conference will be $300.00 per hour, divided between the parties.  This hourly fee includes travel time, time spent for preparation, the mediation and any subsequent work related to this case.  I will provide you with an itemized bill for services at the end of the mediation.

Please notify me immediately if the mediation is cancelled and rescheduled so that I can adjust my own schedule accordingly.  Thank you for allowing you to assist you in this case.

**As neither of you are represented by counsel in this matter, I will require that you bring a check to the mediation to pay for your portion of the mediation services.**

Very truly yours,

BRENNAN & KRETSCHMER

By_____
H. Randal Brennan

HRB:cla

## DECLARATION OF VIRGINIA A. CLARK

I, Virginia A. Clark, declare as follows:

EXHIBIT 23

1.     I am a party to this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

2.     My brother, Keith Clark ("Plaintiff"), and I inherited the real property located at 1898-1900 W. Lincoln Avenue in Anaheim, California (the "Property") from our grandmother.  We each owned half of the Property.  However, during escrow in 2010, I discovered that title documents showed I was the sole owner of the Property.

3.     During the time Plaintiff and I owned the Property, we agreed to mortgage the Property with the larger portion of the mortgage belonging to me.

4.     I timely paid my larger share of the monthly mortgage on the Property.  The monthly payment was approximately $6,600.  Plaintiff paid $1,320 and I paid $5,280.  The lender required the payments to be automatically withdrawn each month, so they came out of my personal checking account and Plaintiff would send me a check for his portion each month.  There were a couple of times I had to cover for Plaintiff and I believe one late payment when I had to postpone the payment until I received his check.  I, however, missed no payments until the final payment, when we were waiting for escrow to close on the Property in 2010.

5.     In 2009, Plaintiff told me he wished to refinance the Property as he needed cash for credit card debt, and was involved in several lawsuits and had recently lost the first one, in addition to needing cash for monthly living expenses.  (See e-mails referenced below.)

6.     When we could not refinance the Property because of the drop in property values, Plaintiff requested to sell the property and contacted a commercial

9

realtor he knew and had used in the past. Plaintiff hired the realtor himself and afterwards asked me to sign the listing agreement.

7. Attached as Exhibit 1 is a true and correct copy of an e-mail I received from Plaintiff dated July 24, 2009. I produced this e-mail in discovery.

8. Attached as Exhibit 2 is a true and correct copy of an e-mail I received from Plaintiff dated October 1, 2009. I produced this e-mail in discovery.

9. Attached as Exhibit 3 is a true and correct copy of another e-mail I received from Plaintiff dated October 1, 2009. I produced this e-mail in discovery.

10. Attached as Exhibit 4 is a true and correct copy of another e-mail I sent to Plaintiff dated October 30, 2009. I received this e-mail from Plaintiff in discovery.

11. We entered escrow to sell the Property in early 2010. The sale price was $1,000,000.

12. During escrow, Plaintiff told me that he was unhappy about the sale price and asked whether I could contribute any more money to reduce the debt so he could net more cash. I told Plaintiff I could not. Plaintiff still wanted to proceed with the sale, so he and I agreed instead that he would receive 100% of the sale proceeds. That meant I would receive nothing from the sale despite my half ownership of the Property.

13. Since my mortgage debt was secured by my half ownership of the Property, I told Plaintiff that I would agree to sell my half of the Property with Plaintiff and give up my share of the sale proceeds, only if Plaintiff would accept and be satisfied with receiving 100% of the cash proceeds from the sale, knowing that we were selling at a reduced price as well.

14. Plaintiff agreed to receiving 100% of the sale proceeds in full satisfaction, and we had the escrow documents amended to reflect Plaintiff would receive 100% of the sale proceeds, including my share of the proceeds. A true and

10

correct copy of the Amendment to Escrow Instructions dated February 25, 2010 is attached as Exhibit 5.

15.     Plaintiff never informed me before or during escrow that I would owe him any additional amounts in connection with the sale of the Property.

16.     The first time Plaintiff claimed that I owed him additional amounts in connection with the sale of the Property was 1½ months after close of escrow, when Plaintiff began sending me e-mails stating I owed him money.

17.     I never agreed at any time, orally or in writing, that I owed Plaintiff any additional amounts in connection with the sale of the Property.

18.     I never agreed at any time, orally or in writing, that I would pay Plaintiff any additional $211,839.62 in connection with the sale of the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed at Yorba Linda, California on December 22, 2011.


Virginia A. Clark

11

**LBR**
700 W. FIRST STREET, SUITE 1 · TUSTIN, CA 92780 · PHONE: 714-731-8900 · FAX: 714-731-8901

## SELLER(S) ESTIMATED CLOSING STATEMENT

**EXHIBIT 24**

**ESCROW NO:** 25945 - r
**ESCROW OFFICER:** Robin Whitler

**DATE:** 3/3/2010
**TIME:** 05:19 PM
**CLOSING DATE:** 3/4/2010

**SELLER(S):** Virginia Clark
**PROPERTY ADDRESS:** 214 Main Street Seal Beach, CA 90740

|  | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** |  | $ 650,000.00 |
| **Deposits** |  |  |
| Initial Deposit |  | $ 3,047.00 |
| **Prorations** |  |  |
| 2nd Installment 09-10 tax @ $1,449.00 for 6 Months From 3/4/2010 To 7/1/2010 |  | $ 941.85 |
| **Commissions** |  |  |
| Baytown Realty | $ 25,500.00 |  |
| **Title Charges - Chicago Title Company** |  |  |
| [Total Title Charges: $4,995.93] |  |  |
| Owners Policy For $850,000.00 | $ 2,483.00 |  |
| Sub escrow fee | $ 62.50 |  |
| 2nd Installment 09-10 tax | $ 1,515.43 |  |
| County Transfer Tax | $ 935.00 |  |
| **Recording Charges** |  |  |
| [Total Recording Charges: $50.00] |  |  |
| Reconveyance | $ 50.00 |  |
| **Escrow Charges** |  |  |
| [Total Escrow Charges: $2,066.95] |  |  |
| Escrow Fee | $ 1,757.50 |  |
| Demand Processing Fee | $ 200.00 |  |
| Federal Express (payment to lender) | $ 14.45 |  |
| Drawing Deed | $ 50.00 |  |
| FTB filing fee | $ 45.00 |  |
| **Loan Payoff** |  |  |
| 1st Trust Deed to: Fidelity Mortgage Lenders Inc. | $ 266,943.30 |  |
| [Total Payoff: $288,933.99] |  |  |
| Interest @ $84.5100 Per Day From 2/15/2010 To 3/5/2010 | $ 1,605.69 |  |
| Other fees | $ 385.00 |  |
| 2nd Trust Deed to: Logan Investments | $ 200,000.00 |  |
| [Total Payoff: $202,360.11] |  |  |
| Interest @ $66.6700 Per Day From 2/1/2010 To 3/5/2010 | $ 2,200.11 |  |
| Fax Fee | $ 30.00 |  |
| Other fees | $ 130.00 |  |
| 3rd Trust Deed to: Albert J. Ricci | $ 50,000.00 |  |
| [Total Payoff: $54,777.78] |  |  |
| Interest @ $13.8889 Per Day From 3/27/2009 To 3/5/2010 | $ 4,777.78 |  |
| **Additional Disbursements** |  |  |
| Zone Report to: First American Natural Hazard Disclosures | $ 119.00 |  |
| August payment to: Fidelity Mortgage Lenders (August???) | $ 3,047.00 |  |
| Per Instructions to: Albert J. Ricci | $ 17,250.00 |  |
| 3.33% withheld to: Franchise Tax Board | $ 28,305.00 |  |
| **Balance Due You** | $ 226,583.09 |  |
| **\*Totals\*** | $ 853,968.85 | $ 853,968.85 |

Additional disbursements:
| | |
|---|---|
| Joe Kalmick | $101,525.00 |
| Lynn Ogata | $ 36,750.00 |
| O'Neil LLP | $ 24,905.13 |

| | |
|---|---|
| Net sales proceeds to Virginia Clark: | $ 63,402.96 |

EXHIBIT 25

LAW OFFICE OF
**BRENNAN & KRETSCHMER**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
1443 TWENTIETH STREET
SUITE A
POST OFFICE BOX 520
VERO BEACH, FLORIDA 32961-0520

H. RANDAL BRENNAN †*
FRED L. KRETSCHMER, JR.
------------

TELEPHONE (772) 778-3777
FACSIMILE  (772) 778-3835

†BOARD CERTIFIED CIVIL  TRIAL LAWYER
*CERTIFIED CIVIL MEDIATOR

January 6, 2012

VIA EMAIL

Dr. Keith Clark
5480 95th Street
Sebastian, Florida 32958
drkdclark@aol.com

Virginia Clark
5960 Via Del Tecolote
Yorba Linda, California 92887
vclarkplus@aol.com

Re:   Clark v. Clark
       District Court mediation
       Date of Mediation: Tuesday, January 3, 2012 at 10:00 a.m.
       Location: Brennan & Kretschmer, 1443 20th Street, Suite A, Vero Beach, FL

Dear Dr. Clark and Ms. Clark:

Enclosed is a copy of the mediator's report which I have filed with the Court.  Also
enclosed is my statement for services rendered in connection with the mediation in this
matter for your consideration.

If you have any questions, please feel free to call me.

Very truly yours,

BRENNAN & KRETSCHMER

By_____
        H. Randal Brennan

HRB:cla
Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

CASE NO. 2:11-cv-14135-JEM

Keith Clark

     Plaintiff

vs.

Virginia Clark,

     Defendant

_____/

## MEDIATION DISPOSITION REPORT

A mediation conference was conducted on January 3, 2012.  The conference resulted in the following:

1. Keith Clark, pro se,  appeared in person for the mediation.

2. Virginia Clark, pro se, did not appear in person for the mediation. However, Ms. Clark did contact the mediator's office in advance of the conference and advised that she was filing a motion to extend the time for mediation, and further that she requested an opportunity to attend mediation by telephone. Ms. Clark was advised that the mediator has no authority to alter the attendance requirement. Opposing party Keith Clark did not agree to Virginia Clark appearing by telephone. The mediator was unable to reach Ms. Clark by phone during the time Keith Clark was at the mediator's office.

3. As a result, no agreement was reached by the parties.

Respectfully submitted

/S/ _____
H. Randal Brennan, Mediator
Mediator #:15632CR

cc:   Keith Clark
      Virginia Clark

Brennan & Kretschmer
P.O. Box 520
1443 20th Street
Vero Beach, FL  32961-0520

Phone: 772-778-3777
Tax ID 76-0753186

```
┌─────────────────┐
│   EXHIBIT 26    │
└─────────────────┘
```

Invoice submitted to:
Keith Clark
5480 95th Street
Sebastian, FL 32958

January 03, 2012

In Reference To:   Mediator's fee in case styled: Keith Clark v. Virginia Clark
                   (Note: this fee has already been evenly divided between the
                   parties. Please pay the amount stated.)

Invoice #17073

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 1/3/2012 HRB | Mediator Fee<br>Draft written correspondence to all counsel of record confirming mediation conference; review mediation summaries; attend mediation conference, including travel time; draft and file mediator's report to court; draft correspondence to counsel concerning report and invoice. | 2.00<br>150.00/hr | 300.00 |
| | For professional services rendered | 2.00 | $300.00 |
| | Balance due | | $300.00 |

*fd in full at mediation on 1/3/12*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<div style="border: 1px solid black">EXHIBIT 27</div>

Case No. 11-14135-CIV- Martinez/Lynch

KEITH D. CLARK, an individual,

      Plaintiff,

   v.

VIRGINIA A. CLARK, an individual,

      Defendant.

## RESPONSE TO PLAINTIFF'S MOTION FOR INSTANT DISCOVERY AND TO AMEND REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Virginia A. Clark ("Defendant") hereby submits her Response to plaintiff Keith D. Clark's ("Plaintiff") Motion for Instant Discovery And To Amend Reply To Opposition To Plaintiff's Motion For Summary Judgment (the "Motion"):

### INTRODUCTION

Defendant had complied and sent her Production of Documents to the Plaintiff, along with the ordered Supplemental Production of Documents. One hundred twenty-six (126) pages were sent originally, numbered VAC01 – VAC126; with an additional twenty-four (24) pages, numbered VAC 122811 01 – VAC 122811 24, being sent. Defendant did make a diligent effort to comply with all paperwork requested and included a brief cover letter with her second production of documents indicating same.

1

In his Motion for Instant Discovery, Plaintiff states there is "…evidence that her intention is to deny Plaintiff and this Court the information necessary to do its work." The Defendant denies this allegation. Defendant has moved twice recently, and many items are not easily available but have either been packed and placed in storage, lost or destroyed. In order to meet the Court time frames, Defendant submitted all documentation available to her at that time and then continued gathering documents to submit with the second production. Credit union financial information was available to Defendant for the past six months and had been submitted to Plaintiff. Defendant has now utilized an additional search and will be providing Defendant with the past 48 months' history as available through a different on-line request format. Defendant had included information on the sale of her commercial property in Seal Beach, California, with her second production of documents. A copy of the escrow closing statement had been retained for tax purposes and was included with the paperwork provided to the Plaintiff. In regards to Plaintiff's asserting that Defendant owns a second vehicle, a Jeep Grand Cherokee, Defendant does in fact own a 1996 Jeep Grand Cherokee that has over 110,000 miles, is non-operational, and has negligible value unless repaired. A copy of the DMV certificate of non-operation was provided to Defendant.

Plaintiff states in his Motion for Instant Discovery that Defendant cannot be living on her current income. All of Defendant's income is listed on the 2011 Income sheet provided to Plaintiff, with the exception of $250 a week for household expenses, $50 worth of groceries and one tank of gasoline weekly, provided to Defendant by Joe Reyes. This supplemental information has been included with the third set of documents provided to Plaintiff. As Defendant expressed when discussing the sale of the commercial property with the Plaintiff, by accepting the reduced price she would be "wiped out" financially. Plaintiff

2

stated as long as he could net $60,000 - $70,000 to purchase a condominium for cash and start fresh, he wanted to proceed with the sale. Defendant had advised all she could offer was for the Plaintiff to receive 100% of the sales proceeds from the sale, which would provide him with the required funds, and an escrow amendment was drawn reflecting same, with all sales proceeds to be paid to Plaintiff. Defendant had offered to pay Plaintiff a portion of her commissions on each closed transaction, which Plaintiff said was "sarcastic and condescending," when in fact it was not.

As stated, the Defendant had sent a production of documents to the Plaintiff as ordered, along with a second production of documents in order to comply with the Court's Motion to Compel. Defendant has provided a third production of documents to comply with the Court's granted Motion for Instant Discovery. An additional forty-two (42) pages have been sent to Plaintiff, numbered VAC 011312 01 – VAC 011312 42. Items included are: documents used to prepare tax returns, including 1099s; financial records including bank statements; statement of income; closing statements of both commercial properties and the home Defendant lost through foreclosure; printouts of mortgage payments; copies of vehicle registration and certificate of non-operation; employers since 2004; and a current financial statement listing all real and personal assets. Defendant has been diligent in trying to locate all responsive documents. It has taken Defendant additional time to get together additional documents for several reasons. The Defendant works full-time and even though considered an independent contractor, is required to attend mandatory trainings and weekly sales meetings. In addition, Defendant has been actively applying for traditional employment. Defendant also has sole physical and legal custody of her two minor children and significant family responsibilities as a single parent. Defendant takes seriously this court case and is doing her best to comply with all requirements and time frames.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant has complied with Defendant's requests for production of documents and Instant Discovery and the Court's Order to Compel.

DATED:  January 14, 2012          Respectfully submitted,


By:  _____
           Virginia A. Clark
           *Defendant In Pro Per*
           5960 Via del Tecolote
           Yorba Linda, CA 92887
           Telephone:  (714) 970-7061
           vclarkplus@aol.com

VAC    11312 01

## JANUARY 2012 FINANCIAL STATEMENT

EXHIBIT 28

### ASSETS

| | |
|---|---:|
| Single family residence | $601,265 |
| 5960 Via del Tecolote, Yorba Linda, CA 92887 | |
|    First mortgage on property | (416,719) |
|    Second mortgage | (248,858) |
| | |
| Cash in savings and checking accounts | 300 |
| | |
| 2004 Lincoln Aviator with 105,000+ miles | 7,000 |
| 1996 Jeep Grand Cherokee with 110,00+ miles, non operational | 1,000 |
| | |
| Personal property and household furnishings | 20,000 |
| | |
| Total assets | ( 36,012) |

### LIABILITIES

| | |
|---|---:|
| Outstanding credit card debt, active accounts | ( 1,900) |
| Outstanding credit card debt, closed accounts, working on repayment arrangements | ( 73,700) |
| | |
| Total liabilities | (75,600) |

VAC 11312 02

.10C  1228101

## 2011 INCOME

| | |
|---|---|
| January 2011: | 0 |
| February 2011: | $1,579.84 Koontz Properties royalty |
| March 2011: | $565.00    Real estate commission |
| April 2011: | 0 |
| May 2011: | $3,186.79 Real estate commissions earned |
| June 2011: | $1,718.38 Real estate commission earned |
| July 2011: | 0 |
| August 2011: | 0 |
| September 2011: | $1,065.00 & $4,200.00 Real estate commissions earned |
| October 2011: | $2,816.25 Real estate commissions earned |
| November 2011: | $10,850.00 Real Estate commissions earned |
| December 2011: | 0 |

TOTAL INCOME: $25,981.26

Vac   1131203

### EMPLOYERS SINCE 2004

I have been employed as an independent contractor.  My real estate license has been with:  Distinct Properties, North Hills Realty and Atlantic & Pacific Real Estate (CA), Inc.

### FUNDS, SERVICES, BENEFITS RECEIVED FROM JOE REYES

Joe Reyes provides $250.00 weekly in household support, along with $50 worth of groceries, and one tank of gasoline.

Vac 1131209

Vac 1228||02

## INFORMATION AVAILABLE FROM 2010 TAX RETURN

Income:
$1,129.56   Royalty from Koontz Properties
$6,666.66   Rental Income from Carl's Jr. property
$8,580.00   Rental Income from Seal Beach property

$8,570.65   Real estate commissions

$99.72   Interest earned on savings

## INFORMATION AVAILABLE FROM 2009 TAX RETURN

Income:
$2,040.90   Royalty from Koontz Properties
$39,999.96  Rental Income from Carl's Jr. property
$34,320.00  Rental Income from Seal Beach property

$9,029.33   Real estate commissions

$28.08   Interest earned on savings

BANK OF AMERICA CORPORATION
CORP ACCTS PAY RI1-121-01-30
125 DUPONT DRIVE
PROVIDENCE, RI 02907

# COMBINED TAX STATEMENT FOR YEAR 2009

THIS STATEMENT REPORTS 1099-DIV (OMB No. 1545-0110), 1099-INT (OMB No. 1545-0112), 1099-OID (OMB No. 1545-0117), 1098 (OMB No. 1545-0901), 1099-MISC (OMB No. 1545-0115), 1099-B (OMB No. 1545-0715), 1099-Q (OMB No. 1545-1760), 1099-A (OMB No. 1545-0877), 1099-C (OMB No. 1545-1424), 1099-S (OMB No. 1545-0997), 1098-E (OMB No. 1545-1576), 1099-SA (OMB No. 1545-1517).
DEPARTMENT OF THE TREASURY-INTERNAL REVENUE SERVICE.

Vac 113121 17

**Bank of America**

BANK# 9003

00041864 A1 0101          ***********AUTO**3-DIGIT 928

VIRGINIA CLARK
24696 PASEO DE TORONTO
YORBA LINDA, CA 92887-5115

PAYERS E.I.N.
56-0906609

CUST SERV PH #
1-888-550-6433

TAXPAYERS IDENTIFICATION NUMBER
██████258

*For Form 1099-B, DIV, INT, MISC, OID and Q: This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.*

| ACCOUNT NUMBER | ACCOUNT TYPE | IRS DESCRIPTION | IRS BOX # | AMOUNT |
|---|---|---|---|---|
| * * * 2009 FORM 1099-MISC, MISCELLANEOUS INCOME * * * | | | | |
| ██████0927 | ACCTS PAYABLE | NONEMPLOYEE COMP | 7 | 7500.00 |
| VIRGINIA CLARK | | | | |

PLEASE NOTE:  INQUIRIES REGARDING THESE ACCOUNTS SHOULD BE DIRECTED TO OUR CUSTOMER SERVICE PHONE NUMBER ABOVE. PLEASE CHECK YOUR TAXPAYER IDENTIFICATION NUMBER AND CALL THE NUMBER LISTED ABOVE IF IT IS INCORRECT.

**TDD HEARING IMPAIRED PLEASE CALL 1-800-288-4408**

*FORM 1099 OID: THIS MAY NOT BE THE CORRECT FIGURE TO REPORT ON YOUR INCOME TAX RETURN. SEE INSTRUCTIONS ON BACK.*

ACCOUNT SUMMARY